**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| HUNTER TILLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION FILE NO.:** |
| | ) | |
| CONSOLIDATED GOVERNMENT OF | ) | |
| COLUMBUS, GEORGIA, COLUMBUS | ) | |
| POLICE DEPARTMENT, CHIEF RICKY | ) | |
| BOREN, in his official and individual | ) | |
| Capacities, and ALLAN H. BROWN, JR., | ) | |
| in his official and individual capacities, and | ) | |
| ABC INSURANCE CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff HUNTER TILLIS ("PLAINTIFF" or "Mr. Tillis"), by and through undersigned counsel, and brings this action against the CONSOLIDATED GOVERNMENT OF COLUMBUS, GEORGIA, the COLUMBUS POLICE DEPARTMENT, CHIEF RICKY BOREN, in his official and individual capacities, and ALLAN H. BROWN, JR. in his official and individual capacities, and alleges as follows:

## INTRODUCTION

1.

Hunter Tillis was recklessly and callously pursued, shot and wounded on November 6, 2016 as a result of the objectively unreasonable and unconstitutional deadly force used by Defendant ALLAN H. BROWN, JR.   Defendant BROWN was a police officer for the Columbus Police Department and was acting in that capacity when he pursued and shot Mr. Tillis.

2.

This civil action seeks damages against Defendants for committing acts under color of law, and depriving Mr. Tillis of rights secured by the Constitution and laws of the United States, and the State of Georgia and State of Alabama (if applicable).

3.

Through this action, Mr. Tillis seeks all relief to which he may be entitled under the law, including an award of compensatory damages, punitive damages, attorney fees, and costs from Defendants for the deprivation and violation of PLAINTIFF'S rights under the United States Constitution, Georgia and Alabama law, including but not limited to the Georgia and Alabama State Constitutions.  PLAINTIFF contends that Defendants are guilty of certain acts and/or omissions, created, maintained, and/or engaged in policies, procedures, practices and/or customs which have contravened and violated the rights guaranteed to PLAINTIFF under the Fourth and Fourteenth Amendments to the United States Constitution, as well as various provisions of Georgia law and Alabama law.

**PARTIES, VENUE AND JURISDICTION**

4.

The Court has jurisdiction over all causes of action set forth in this Complaint based upon 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4), to obtain redress for deprivation of rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988. Plaintiff invokes the supplemental jurisdiction of this Court for the state law claims that arise from the same facts and circumstances under 28 U.S.C. § 1367 and other applicable law.

5.

Venue is proper pursuant to 28 U.S.C. § 1391, in that events or occurrences giving rise to Plaintiff's claims set forth in this Complaint occurred within this District and Division, and because at least one Defendant resides in this District and Division.

6.

PLAINITFF has provided timely ante litem notice to Defendants CONSOLIDATED GOVERNMENT OF COLUMBUS, GEORGIA and COLUMBUS POLICE DEPARTMENT. (See Ante Litem Notice attached hereto as Exhibit "A").

## **PARTIES**

7.

PLAINTIFF, HUNTER TILLIS, resides in Columbus, Muscogee County, Georgia.

8.

Defendant CONSOLIDATED GOVERNMENT OF COLUMBUS, GEORGIA ("the City"), is a municipal governmental entity located in this District and Division.  Columbus, Georgia is a consolidation of the former governments of the City of Columbus and the County of Muscogee.   The City's policies, practices, and customs were a moving force in the Constitutional violations described in this Complaint.   The City may be served with process by service upon Mayor, Teresa Tomlinson, at 100 10th Street, 6th Floor, Columbus, Georgia 31901.

9.

Defendant COLUMBUS POLICE DEPARTMENT is a public agency, duly organized and existing under and by virtue of the laws of the State of Georgia.  It is duly authorized by the laws of the State of Georgia to promulgate customs, practices and policies for its police officers.

It is located in this Court's District and Division.    Defendant COLUMBUS POLICE DEPARTMENT is a department of the CITY, that may be served with process by serving its Chief of Police, CHIEF RICKY BOREN at Police Department Headquarters, 510 10th Street, 4th Floor, Columbus, Muscogee County, Georgia 31901, and as an agent of the CITY by serving Mayor, Teresa Tomlinson, at 100 10th Street, 6th Floor, Columbus, Muscogee County, Georgia 31901.

10.

Defendant CHIEF RICKY BOREN is a resident of and domiciled in Columbus, Georgia, and is a citizen of the United States of America.  Defendant BOREN was the Chief of Police of the COLUMBUS POLICE DEPARTMENT in Muscogee County, Georgia, at the time of the incidents described herein, and the supervisor or commanding officer of Defendant ALLAN H. BROWN, JR., and in that position and capacity, had the authority under state law and municipal practice of said City, to formulate and oversee policies, practices, customs of the police department and for the hiring, screening, training, supervision and discipline of police officers in the department.    In that position and capacity, Defendant CHIEF RICKY BOREN, had the authority and was responsible for the hiring, training, and supervision of agents, employees and police officers of the COLUMBUS POLICE DEPARTMENT, investigating complaints of police misconduct and imposing discipline or recommending the imposition of discipline upon police officers and formulating policies, practices, and customs relating thereto.  Defendant BOREN is sued in his individual and official capacity.  He may be served with process at his place of employment, Police Headquarters located at 510 10th Street, 4th Floor, Columbus, Muscogee County, Georgia 31901, or wherever he may be found.  He is being sued in his individual and official capacities.

4

11.

Defendant ALLAN H. BROWN, JR. is a resident of and domiciled in Seale, Alabama, and is a citizen of the United States of America.  Defendant BROWN was a Columbus Police Department police officer on duty at the time of the incidents complained of herein and was the officer who wrongfully chased the vehicle in which PLAINTIFF was a passenger and assaulted, and otherwise used unreasonable and excessive and deadly force on PLAINTIFF in violation of, and with deliberate indifference to, his state and federal civil and constitutional rights.  At all times mentioned herein, Defendant BROWN was acting under color of law, to wit, under the statutes, ordinances, regulations, policies, customs and usages of the State of Georgia, and the Columbus Police Department and within the scope of his employment.  Defendant BROWN is sued in his individual and official capacities.  Defendant BROWN may be served with process at his personal residence, or wherever he may be found.

12.

Defendant ABC INSURANCE CORPORATION is a foreign and/or domestic insurance company licensed to do business and doing business in the State of Georgia.  Upon information and belief, Defendant ABC CORPORATION had in force and effect a policy of automobile liability insurance that provided automobile liability insurance coverage on the patrol unit operated by Defendant BROWN.

**STATEMENT OF FACTS**

13.

At all relevant times, Defendant BROWN was a sworn member of the COLUMBUS

POLICE DEPARTMENT, and was acting under the color of law and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Georgia, the CITY and COLUMBUS POLICE DEPARTMENT and under the authority of such offices and within the scope of his employment as a police officer.

14.

At all times relevant times, Defendant CHIEF RICKY BOREN was vested with the obligation of ensuring that the police officers of the COLUMBUS POLICE DEPARTMENT, including Defendant BROWN, complied with the color of law and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Georgia, the CITY and the COLUMBUS POLICE DEPARTMENT.   Defendant CHIEF RICKY BOREN was also responsible for the hiring, training, supervision and discipline of agents, employees and police officers of the COLUMBUS POLICE DEPARTMENT, including Defendant BROWN.

15.

Each of the foregoing facts and paragraphs is incorporated as if fully set forth herein. Moreover, the facts set forth in the remainder of this Complaint are applicable to all Counts, Claims, Rights and Caused of Action asserted herein in order to provide context specificity.

16.

The tragic series of events that give rise to this case occurred on November 6, 2016 and began in Columbus, Muscogee County, Georgia.

17.

On November 6, 2016, at or near 4:20 a.m., Captain William Turner (of the COLUMBUS POLICE DEPARTMENT), while on duty and acting in his official capacity, was operating an unmarked police car near the Reese Crossing Shopping Center in Columbus,

Georgia when he observed a Pontiac GS6 enter a parking lot located at 3709 Gentian Boulevard.

18.

Shortly thereafter, the Pontiac GS6 returned to the roadway, Captain Turner began to follow the vehicle in his unmarked police car.

19.

Captain Turner made the decision to conduct an investigatory stop of the Pontiac GS6 once the vehicle was stopped on or near College Drive.  At that time, he was notified by police radio that the vehicle had been reported stolen.

20.

Captain Turner stopped behind the Pontiac GS6, and at the time, the Pontiac GS6 drove away from Turner's unmarked vehicle.

21.

Captain Turner then initiated a pursuit of the Pontiac GS6.

22.

At that time, the Pontiac GS6 was being driven by Christopher Redwine.  Mr. Tillis was a backseat passenger (seated on the right passenger side) in the vehicle operated by Mr. Redwine, and Hannah Wuenschel was a front seat passenger in the same vehicle.

23.

At the time Captain Turner engaged in the pursuit of the Pontiac GS6, he had no information regarding the identity of the driver of the vehicle, or concrete information as to whether there were other occupants of the vehicle.  He was aware of the alleged vehicle being stolen, he did not know if the driver of the vehicle (or the occupants) was the person suspected of

stealing the vehicle.

24.

At the time Captain Turner engaged in the pursuit, he had no concrete evidence that the driver or occupants of the Pontiac GS6 had committed a felony offense; rather, he unreasonably believed that he had probable cause to pursue and arrest the occupants of the Pontiac GS6 for purported misdemeanor offenses, including fleeing or attempting to elude a police officer.

25.

Within minutes of engaging in pursuit, COLUMBUS POLICE DEPARTMENT Office, Merri Parish, while on duty and acting in her official capacity, joined the pursuit. At the time that she joined the pursuit, Officer Parrish had no information regarding the identity of the driver of the vehicle, or concrete information as to whether there were other occupants of the vehicle.

26.

At the time she joined the pursuit, Officer Parish had no concrete evidence that the driver or occupants of the Pontiac GS6 had committed a felony offense; rather, she unreasonably believed that she had probable cause to pursue and arrest the occupants of the Pontiac GS6 for purported misdemeanor offenses, including fleeing or attempting to elude a police officer.

27.

At the time Officer Parrish joined in the pursuit of the Pontiac GS6, she had no information regarding the identity of the driver of the vehicle, or concrete information as to whether there were other occupants of the vehicle.  Assuming she was aware of the alleged vehicle being stolen, she did not know if the driver of the vehicle (or the occupants) was the person suspected of stealing the vehicle.

28.

At or near 4:23 a.m., Defendant ALLAN H. BROWN, JR. ("Defendant BROWN"), while on duty and acting in his official capacity, was at the Columbus Police Department Headquarters located in Columbus, Muscogee County, Georgia.   He heard that Captain William Turner was involved in a vehicle pursuit in the City.

29.

Defendant BROWN, without any knowledge of the reason for the pursuit, left headquarters and joined the pursuit.  It doesn't appear that Defendant BROWN was assigned to road duty at the time that he made the decision to join the pursuit.  Further, it does not appear that Captain Turner requested or otherwise asked Defendant BROWN to join the pursuit.

30.

At the time Defendant BROWN joined in the pursuit of the Pontiac GS6, he had no information regarding the identity of the driver of the vehicle, or concrete information as to whether there were other occupants of the vehicle.  Assuming he was aware of the alleged vehicle being stolen, he did not know if the driver of the vehicle (or the occupants) was the person suspected of stealing the vehicle.

31.

At the time Defendant BROWN engaged in his pursuit, he was not presented with nor did he have knowledge of any facts that would lead a reasonably objective law enforcement officer to conclude that Mr. Tillis or the other occupants had committed a major violation or crime warranting a high-speed chase, was committing a crime warranting a high-speed chase, or was

about to commit a crime, or that he (or any other occupant) posed a threat or risk of death or great bodily harm to anyone, and no call for his assistance had been made.

32.

At the time he engaged in pursuit, Defendant BROWN had no concrete evidence that the driver or occupants of the Pontiac GS6 had committed a felony offense; rather, he unreasonably believed that he had probable cause to pursue and arrest the occupants of the Pontiac GS6 for purported misdemeanor offenses, including fleeing or attempting to elude a police officer.

33.

Even if Defendant BROWN thought that the Pontiac GS6 was a "stolen vehicle," at the time that he began his pursuit, he had no reason to believe that the occupants of the Pontiac GS6 (or the vehicle itself) posed an immediate threat of physical violence to himself or others.

34.

Further, even if Defendant BROWN, at the time he began his pursuit, was aware that motor vehicle was purportedly stolen, in Georgia, motor vehicle theft ranges from misdemeanor to felony, depending on the facts and circumstances involved in each case, such facts and circumstances include the status of the vehicle driver and/or occupants.   Thus, at the time he began his pursuit, Defendant BROWN would have had no reason to dismiss the possibility that the event involved a misdemeanor offense or possibly no offense at all.

35.

Defendant BROWN, Captain Turner and Officer Parrish were all operating patrol cars or units owned by, in the custody of and/or under the control of Defendant CHIEF RICKY BOREN, the COLUMBUS POLICE DEPARTMENT and the City.

36.

Defendant BROWN, on his own initiative, intentionally took over the pursuit to become the lead police vehicle and maneuvered his patrol car directly behind the Pontiac GS6. Defendant BROWN can be heard, on audio captured by one of the officers, telling the other officers "let me come around you," so he can lead the pursuit.

37.

During the pursuit, there were no pedestrians in the areas where the pursuit occurred.

38.

During the pursuit, the Pontiac GS6 did not strike any parked or moving cars in the areas where the pursuit occurred.

39.

During the pursuit, the Pontiac GS6 did not force any cars off the roadway in the areas where the pursuit occurred.

40.

During the pursuit, there was virtually no traffic on the roadways traveled in the areas where the pursuit occurred, except for law enforcement cars involved in the pursuit.

41.

During the pursuit, Defendant BROWN can be heard stating his speed as he continues the pursuit, stating "dispatch speeds are 98 mph," and two-minutes later, "advise, speed 107 mph."

42.

Defendant BROWN followed the Pontiac GS6 over the 13th Street Bridge in Columbus,

Georgia as it crossed over into Phenix City, Alabama onto J.R. Allen Parkway.  As Defendant BROWN followed the Pontiac GS6, he activated his patrol car Dashcam capturing some of the events that were unfolding.

43.

The Pontiac GS6 traveled from J.R. Allen Parkway to Riverchase Drive, in Phenix City, Alabama.  Riverchase Drive turns into 5th Avenue.  The pursuit ended when the Pontiac GS6 traveled off road into bushes located in the yard of a home located at 3507 Fifth Avenue, Phenix City, Alabama.

44.

As the pursuit is coming to an end, Defendant BROWN can be heard saying "[W]e're gonna be on Riverchase Road dispatch.  He has wrecked out.  Wrecked out.  He is spinning. Start uh rescue."

45.

Defendant BROWN'S Dashcam footage shows his vehicle stop near the passenger side of the Pontiac GS6.

46.

As the Pontiac GS6 and Defendant BROWN's patrol car are stopped, Defendant BROWN'S Dashcam footage shows that his patrol car's head lights are on, illuminating the passenger side clearing displaying the fact that there are passengers in the vehicle. (See the photographs attached hereto as Exhibits "B" to the Complaint).

47.

As Defendant BROWN'S Dashcam footage continues, Defendant BROWN, having exited his vehicle.  Defendant BROWN positions himself a safe distance away from stopped

the Pontiac GS6. By this time, Defendant BROWN has visualized the passengers seated inside of the Pontiac GS6, and therefore, has concrete knowledge of the fact that passengers are seated inside of the Pontiac GS6.

48.

While Defendant BROWN is still standing a safe distance away from the Pontiac GS6, the Pontiac GS6 begins to back up, away from Defendant BROWN's location.

49.

As the Pontiac is backing away from Defendant BROWN, he fires shots at the Pontiac GS6. Defendant BROWN'S Dashcam footage shows the first five (5) shots entering the rear window of the Pontiac GS6 traveling from the right rear side of the vehicle towards the left (driver's side) of the vehicle. (See the photographs attached hereto as Exhibits "C" to the Complaint).

50.

Without a change in his position, Defendant BROWN continues his hail of gunfire, firing another six (6) shots into the Pontiac GS6, with shots 6 and 7 entering the rear passenger window, where Mr. Tillis was seated, and shots 8-11 entering the front passenger window, where Ms. Wuenschel was seated. (See the photographs attached hereto as Exhibits "D" to the Complaint).

51.

Defendant BROWN'S Dashcam footage shows that as he is firing his duty weapon at the reversing Pontiac GS6, the passengers can be heard yelling and pleading for him to stop firing.

52.

Defendant BROWN'S Dashcam footage shows that he stops firing long enough to reload his gun, and after reloading, he moves to the front of the Pontiac GS6 and fires his duty weapon ten (10)

more times through the front windshield at Mr. Tillis and the other occupants of the vehicle.   (See the photographs attached hereto as Exhibits "E" to the Complaint).

53.

At the time he began firing his duty weapon, Defendant BROWN had positioned himself in a safe location such that the movement of the Pontiac GS6 would not have presented an imminent threat of death or great bodily harm to him or anyone else that arrived to the scene.

54.

Defendant BROWN'S hail of gunfire resulted in fatal injuries to the driver of the Pontiac GS6 and gunshot injuries to the two passengers, including Mr. Tillis.   Specifically, Mr. Tillis was struck twice by Defendant BROWN'S gunfire, one bullet went through his nose and came out through the roof of his mouth, busting out his top teeth.

55.

Defendant BROWN'S Dashcam footage shows that after his hail of gunfire stops, Defendant BROWN is heard yelling at the occupants in the Pontiac GS6 telling them to "get down on the fucking ground or I will fucking shoot you."

56.

Defendant BROWN'S Dashcam footage shows that after Defendant BROWN'S hail of gunfire stops, the occupants of the Pontiac GS6 can be heard yelling and begging for help for their gunshot injuries.

57.

There was no precipitating gunfire by Mr. Tillis, or anyone else occupying the Pontiac GS6, and there was never any return gunfire from the Pontiac GS6.   The occupants of the Pontiac GS6 were

unarmed.  No firearms or other weapons capable of causing death or great bodily harm were found in Mr. Tillis' possession or the possession of any other occupant of the Pontiac GS6.

58.

While there were other officers at the scene, no other officer fired their duty weapons at the Pontiac GS6.

59.

As a direct result of the actions of Defendant BROWN, Mr. Tillis was tragically wounded, having been shot multiple times in his face.

60.

Dashcam video footage of the events occurring immediately after the shooting shows Defendant BROWN attempt to explain his gunfire, stating "he tried to run me over in reverse and that's when I took him out."   There is Dashcam video footage from Defendant BROWN's patrol car directly contradicting this claim, showing that he was standing a safe distance from the Pontiac GS6, and not in the rear of vehicle, when he began and continued his hail of gunfire.

61.

Defendant BROWN's Dashcam video footage, along with the gunshot entry points into the vehicle and the gunshot wounds to the occupants of the Pontiac GS6 clearly show that his initiation of gunfire, and continuous gunfire, was a barbaric and excessive use of deadly force that demonstrates Defendant BROWN's deliberate indifference to the constitutional rights of Mr. Tillis.

62.

At the time that Defendant BROWN began firing his weapon (and in the moments leading up to the shooting), there was no conduct, actions or behavior demonstrated by Mr. Tillis, or any other

occupant of the Pontiac GS6, that presented an imminent threat of death or great bodily harm to any law enforcement officer on the scene or anyone else.

63.

At the time that Defendant BROWN began firing his weapon, he had no basis to believe that any occupant of the Pontiac GS6 was armed with a weapon of any kind.

64.

Defendant BROWN's use of deadly force under the circumstances was not objectively reasonable.

65.

In using deadly force under the circumstances with which he was confronted, Defendant BROWN acted with callous and reckless disregard and deliberate indifference to the constitutional rights of Mr. Tillis.

66.

Under the totality of circumstances confronting Defendant BROWN, no objectively reasonable law enforcement officer would have believed that the occupants of the Pontiac GS6 presented an imminent threat of bodily injury to anyone at all, much less Defendant BROWN or any other officer that arrived to the scene.

67.

Under the totality of circumstances confronting Defendant BROWN, no objectively reasonable law enforcement officer would have believed that deadly force was necessary to prevent serious bodily injury or death to anyone at all, much less Defendant BROWN or any other officer that arrived to the scene.

68.

Under the totality of circumstances, any objectively reasonable officer would and should have concluded that deadly force was not necessary or justified as no imminent threat of death or great bodily harm existed when Defendant BROWN began firing, and no imminent threat of death or great bodily harm existed when he reloaded and continued firing another ten (10) rounds.  Said another way, it was objectively unreasonably for Defendant BROWN to use deadly force against Mr. Tillis.

69.

Defendant BROWN's use of deadly force was not warranted, justified or necessary for his own self-defense or in defense of others.

70.

Defendant BROWN did not render or provide first aid, or any comfort measures to alleviate pain and suffering to Mr. Tillis.  Instead, he sought to explain his conduct to his fellow officers as Mr. Tillis lay bleeding and suffering on the ground (at Defendant BROWN's command).

71.

Defendant BROWN demonstrated a callous and deliberate indifference to the suffering and serious medical needs of Mr. Tillis.

72.

The callous and deliberate indifference to the serious medicals needs of Mr. Tillis constitute an unnecessary and wanton infliction of pain and suffering.

73.

The use of deadly force by Defendant BROWN was not reasonable under the circumstances and violated Mr. Tillis' rights under the Fourth and Fourteenth Amendments of the United States Constitution to be free from the unreasonable and excessive use of force as well as the Georgia and Alabama Constitutions.

74.

It was clearly established on November 6, 2016, that deadly force may not be used by police officers unless it was reasonable under the circumstances.

75.

The individual Defendants acted willfully and with intent to injure, and therefore, they are not entitled to official immunity under Georgia law.

**Additional Relevant Facts Regarding Defendant BROWN and Defendant CHIEF RICKY BOREN – Acting Under Color of Law**

76.

At all times relevant hereto, Defendant BROWN was employed by and acting in the course and scope of his employment as a police officer with the COLUMBUS POLICE DEPARTMENT and the CITY, having been hired and appointed as such by Defendant CHIEF RICKY BOREN.

77.

At all times relevant hereto, Defendant CHIEF RICKY BOREN was employed by and acting in the course and scope of his employment as a police officer with the COLUMBUS POLICE DEPARTMENT and the CITY.

78.

In working as a police officer for the COLUMBUS POLICE DEPARTMENT and the CITY, while attempting to stop the Pontiac GS6 in which Mr. Tillis was a passenger, pursuing said

vehicle, including across state lines, attempting to seize Mr. Tillis into custody, using law enforcement equipment and police units, an in firing his duty weapon at Mr. Tillis, Defendant BROWN was acting under color of law.

79.

At all times relevant hereto, Defendant CHIEF RICKY BOREN was the duly elected Chief of Police for the COLUMBUS POLICE DEPARTMENT and was engaged and performing duties within the course and scope of his office.   All actions attributable herein to CHIEF RICKY BOREN were in furtherance of his position as Chief of Police for the COLUMBUS POLICE DEPARTMENT.   Defendant CHIEF RICKY BOREN's actions were in furtherance of his duties to preserve the peace within the territorial jurisdiction of the CITY.   Thus, at all times material hereto, Defendant CHIEF RICKY BOREN was acting under color of law when performing his duties as Chief of Police for the COLUMBUS POLICE DEPARTMENT.

### Additional Relevant Facts Regarding Defendant the CITY and the COLUMBUS POLICE DEPARTMENT – Acting Under Color of Law

80.

At all times relevant hereto, Defendant the CITY is a municipal governmental entity located in this District and Division.   Columbus, Georgia is a consolidation of the former governments of the City of Columbus and the County of Muscogee.

81.

Defendant the COLUMBUS POLICE DEPARTMENT is a municipal governmental entity located in this District and Division.

82.

The territorial jurisdiction of the COLUMBUS POLICE DEPARTMENT extends

throughout the CITY.

83.

The unlawful pursuit began and occurred in the territorial jurisdiction of the CITY.

84.

At all times material hereto, Defendant CHIEF RICKY BOREN, the COLUMBUS POLICE DEPARTMENT, and the CITY employed Defendant BROWN as a full-time police officer for the COLUMBUS POLICE DEPARTMENT.

85.

At all times relevant hereto, Defendant CHIEF RICKY BOREN was and has been the duly elected Chief of Police for the COLUMBUS POLICE DEPARTMENT.  As Chief of Police, Defendant CHIEF RICKY BOREN is a "decision maker" and "policy maker" for the COLUMBUS POLICE DEPARTMENT.

86.

At all times relevant hereto, Defendant the CITY mandated that Defendant CHIEF RICKY BOREN enforce and support the laws of the United States, the Constitution, laws of the State of Georgia and all other applicable laws within the territorial jurisdictional limits of the CITY.   In fact, upon assuming office, CHIEF RICKY BOREN took an oath to do this.

87.

In furtherance of the CITY and the COLUMBUS POLICE DEPARTMENT, Defendant CHIEF RICKY BOREN, obtained certain equipment to be used by and on behalf of the CITY and the COLUMBUS POLICE DEPARTMENT, including but not limited to, the patrol cars

operated by Defendant BROWN and the other officers of the COLUMBUS POLICE DEPARTMENT. The patrol cars utilized by Defendant BROWN in pursuit of the Pontiac GS6 was a car obtained by CHIEF RICKY BOREN, on behalf of the CITY and the COLUMBUS POLICE DEPARTMENT, for purposes of executing the mandates of the CITY and the COLUMBUS POLICE DEPARTMENT, making arrests and preserving the peace within the territorial jurisdiction of the CITY and the COLUMBUS POLICE DEPARTMENT.

88.

As Chief of Police, CHIEF RICKY BOREN is and was responsible for the actions of the police officers that work for the COLUMBUS POLICE DEPARTMENT. This responsibility arises by operation of law and makes no exception for actions or conduct attributable to the police officers that result in the deprivation of rights protected by the United States Constitution and enforceable under 42 U.S.C. § 1983.

89.

As Chief of Police, CHIEF RICKY BOREN hired, supervised, trained, entrusted with a police vehicle, used and allowed Defendant BROWN to work as a police officer for the COLUMBUS POLICE DEPARTMENT. This was in furtherance of CHIEF RICK BOREN's duty to execute the mandates of the CITY and the COLUMBUS POLICE DEPARTMENT, make arrests and preserve the peace within the territorial jurisdiction of the CITY and the COLUMBUS POLICE DEPARTMENT.

90.

As such, Defendant CHIEF RICKY BOREN is responsible for the actions of Defendant BROWN including the consequences of his actions.

91.

The authority granted CHIEF RICKY BOREN by statute, and pursuant to the mandates of the CITY and the COLUMBUS POLICE DEPARTMENT make him a policy maker and decision maker of Defendant BROWN.

92.

At all times relevant hereto, Defendant CHIEF RICKY BOREN was acting under color of law when performing his functions as Chief of Police for the COLUMBUS POLICE DEPARTMENT.

93.

At all times relevant hereto, the CITY and the COLUMBUS POLICE DEPARTMENT had a policy, custom or practice that required police officers to carry approved handguns while on duty.

94.

The compensation for Defendant BROWN and Defendant CHIEF RICKY BOREN was fixed and paid for by the CITY and the COLUMBUS POLICE DEPARTMENT.

95.

At all times relevant hereto, as a police officer on November 6, 2016, Defendant BROWN, was exercising his authority, as derived from CHIEF RICKY BOREN, the CITY and the COLUMBUS POLICE DEPARTMENT, of "making arrests and preserving the peace" and, therefore, was acting under color of law when he engaged in the pursuit and, ultimately, the unconstitutional seizure and shooting of Mr. Tillis.

96.

At all times relevant hereto, Defendant BROWN, as a police officer for the CITY and the COLUMBUS POLICE DEPARTMENT, was acting under the direction and control of CHIEF

RICKY BOREN, the CITY and the COLUMBUS POLICE DEPARTMENT.

97.

The relationship of the COLUMBUS POLICE DEPARTMENT and the CITY is such that the CITY is the master, employer and/or supervisor of Defendant CHIEF RICKY BOREN and Defendant BROWN.

98.

The CITY and the COLUMBUS POLICE DEPARTMENT had the authority, right and duty to control, direct and supervise the actions of CHIEF RICKY BOREN and Defendant BROWN.

99.

The day-to-day operating funds for the COLUMBUS POLICE DEPARTMENT were provided, in whole or in-part, by the CITY.

100.

Along those same lines, a portion of the fines collected for the prosecution of the violation of local ordinances was paid to the CITY.

101.

Therefore, in his official capacity as Chief of Police, Defendant CHIEF RICKY BOREN was a "decision maker" and "policy maker" for the COLUMBUS POLICE DEPARTMENT and the CITY such that actions or inactions on his part are attributable and imputable to the CITY and the COLUMBUS POLICE DEPARTMENT.

102.

In both his individual and official capacity as Chief of Police, Defendant CHIEF RICKY BOREN, was responsible for adopting, promulgating, implementing and enforcing policies, customs or practices pertaining to making arrests and preserving the peace within the CITY's territorial jurisdiction as well as other customs, policies or practices including customs, policies and practices regarding and governing the screening, hiring, discipline, training and supervision and retaining of police officers to ensure that each police officer as properly qualified and trained to perform the duties and functions of a peace officer, including making arrests, preserving the peace, and the constitutional use of deadly force.  These hiring customs, policies and practices include the proper scrutinization of the backgrounds of potential police officer candidates, and the promulgation, enforcement and training on pursuits and on the constitutionally-compliant use of deadly force policy.

103.

The need for such policies is so obvious - especially where, as here, the police officers are armed and have a history of the use of excessive force – that the failure to promulgate and enforce such policies amount to deliberate indifference to the constitutional rights of those persons encountering police officers with the COLUMBUS POLICE DEPARTMENT, such as and including Defendant BROWN.

104.

In appointing, hiring and allowing Defendant BROWN to work as a police officer for the COLUMBUS POLICE DEPARTMENT, Defendant CHIEF RICKY BOREN demonstrated deliberate indifference to the constitutional rights of persons within the territorial jurisdiction of the CITY, including Mr. Tillis, because CHIEF RICKY BOREN did not properly scrutinize the background of Defendant BROWN,  did not adopt or follow an adequate or proper hiring and

retention policy, did not adopt or follow an appropriate training policy, and did not adopt and enforce a constitutionally-compliant use of deadly force policy.

105.

Defendant BROWN had a history of exercising excessive force when making arrests and assisting other law enforcement officers, which history was known or should have been known by CHIEF RICKY BOREN, the CITY and the COLUMBUS POLICE DEPARTMENT.  Many of these events were documented in the business records of the CITY and the COLUMBUS POLICE DEPARTMENT, and/or were a matter of public record.

106.

Defendant BROWN also had a history of exhibiting non-compliance with the pursuit customs, policies and practices of the CITY and the COLUMBUS POLICE DEPARTMENT, which history was known or should have been known by CHIEF RICKY BOREN, the CITY and the COLUMBUS POLICE DEPARTMENT.  This fact was documented in the business records of the CITY and the COLUMBUS POLICE DEPARTMENT.

107.

Defendant CHIEF RICKY BOREN did not properly vet Defendant BROWN, or scrutinize his background prior to hiring and appointing him as a police officer.  If he, the CITY and the COLUMBUS POLICE DEPARTMENT had an appropriate policy to screen the backgrounds of candidates or potential officers, or adequate criteria for the screening of candidates or potential officers that, and it was properly applied, it would have not only identified Defendant BROWN as being unfit for appointment and/or hire and/or retain, but would cause CHIEF RICKY BOREN to decline or refuse such appointment, hire or retention.

108.

Defendant CHIEF RICKY BOREN's appointment, hiring and retention of Defendant BROWN was an exercise of his decision making and policy making authority on behalf of the CITY and the COLUMBUS POLICE DEPARTMENT such that his actions and inactions are fairly and reasonably imputable to the CITY and the COLUMBUS POLICE DEPARTMENT.

109.

Defendant CHIEF RICKY BOREN's failure to properly vet Defendant BROWN and scrutinize his background and performance, coupled with the CITY and the COLUMBUS POLICE DEPARTMENT's failure to have an adequate or proper hiring and retention policy resulted in CHIEF RICKY BOREN appointing, hiring and retaining a police officer who had a long history of the use of excessive force and a history of pursuit policy violation that should have excluded him from serving as a policy officer for the CITY and the COLUMBUS POLICE DEPARTMENT.

110.

Defendant BROWN's history of the use of excessive force and a history of pursuit policy violation was known or should have been known by CHIEF RICKY BOREN, and BOREN'S appointment, hire and retention of Defendant BROWN adopted and/or ratified such history as an acceptable policy, custom or usage of the CITY and the COLUMBUS POLICE DEPARTMENT.

111.

Further, Defendant CHIEF RICKY BOREN, was responsible for adopting, implementing and enforcing policies to ensure the proper supervision and training of police officers in making arrests, pursuits and in the use of force including the use of deadly force within the contours of the United States Constitution and Georgia State Constitution, also the Alabama State Constitution (if applicable).

112.

The CITY and the COLUMBUS POLICE DEPARTMENT lacked an appropriate use of deadly force policy. The need for such policies is so obvious for the safety of the public and the protection of constitutional rights that the lack of such policies constitutes deliberate indifference and a reckless disregard for the public and Mr. Tillis' constitutional rights.

113.

Defendant CHIEF RICKY BOREN, and hence the CITY and the COLUMBUS POLICE DEPARTMENT, authorized the army of police officers, including Defendant BROWN (and other officers who participated in the subject events) and it was not only reasonably foreseeable but also a virtual certainty that authorized firearms would be used by the CITY's police officers in making arrests and preserving the peace, functions they were authorized to perform by state statute, and were performing the night/early morning of November 6, 2016 when Defendant BROWN pursued and then shot Mr. Tillis.

114.

Defendant BROWN was authorized by CHIEF RICKY BOREN to carry firearms or duty weapons in keeping with the custom, policy and practice of the CITY and the COLUMBUS POLICE DEPARTMENT. Despite arming the police officers, these Defendants provided no training, prior to arming them or on an ongoing basis, regarding constitutional limitations of the

use of deadly force or "shoot, don't shoot" scenarios that would have enabled them to make objectively reasonable decisions on when to use deadly force, nor did these Defendants promulgate and enforce a written constitutionally-compliant use of deadly force policy.

115.

The lack of proper use of deadly force training and "shoot, don't shoot" training, resulted in, was a direct cause of and the moving force behind Defendant BROWN's shooting of Mr. Tillis when the circumstances were such that it was not objectively reasonable to use deadly force.

116.

Mr. Tillis shows that the conduct, acts and omissions of CHIEF RICKY BOREN, in both his individual and official capacity, resulting in the implementation, utilization and execution of unconstitutional customs, policies and practices that were a direct and proximate cause and moving force of the shooting of Mr. Tillis.

117.

Proper use of deadly force training would have enabled Defendant BROWN to recognize that the facts and circumstances with which they were presented did not justify the use of deadly force, that it was not objectively reasonable to use deadly force and that they should not use deadly force against Mr. Tillis, who was clearly a passenger in the Pontiac GS6.

118.

Proper use of deadly force training would have enabled Defendant BROWN to recognize that neither Mr. Tillis nor the other occupants of the Pontiac GS6, presented an imminent risk of

death or great bodily harm to anyone at or near the scene, and that the use of deadly force was not necessary warranted or justified for his own self-defense or the defense of others.

119.

Further, Defendant CHIEF RICKY BOREN's actions or rather policy of inaction in failing to train and/or re-train Defendant BROWN on the constitutional limitations of the use of deadly force constituted deliberate indifference to violations of others' constitutional rights committed by his subordinates, including Defendant BROWN.

120.

CHIEF RICKY BOREN, the CITY and the COLUMBUS POLICE DEPARTMENT's policy of inaction despite awareness – constructive or actual – that its policy will cause a constitutional violation may be "the functional equivalent of a decision by the CITY and the COLUMBUS POLICE DEPARTMENT itself to violate the Constitution." *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (citing of *Canton, Ohio v. Harris*, 489 U.S. 378, 395, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).  These are standards recognized by the United States Supreme Court and, as decision makers and policy makers, Defendants CHIEF RICKY BOREN, the CITY and the COLUMBUS POLICE DEPARTMENT should have been aware of these standards.  Thus, the failure of CHIEF RICKY BOREN, the CITY and the COLUMBUS POLICE DEPARTMENT to adopt, promulgate, implement and utilize appropriate use of deadly force standards is, in itself, a policy of inaction, and therefore, a decision to violate the Constitutional rights of those persons coming into contact with its police officers while they are performing their peacekeeping functions.

**Additional Relevant Facts Regarding Defendant BROWN's Use of Vehicle**

121.

During the pursuit and at the time of the shooting, Defendant BROWN was using a patrol car owned by, in the custody or under the control of the CITY and the COLUMBUS POLICE DEPARTMENT.  To the extent that the CITY and the COLUMBUS POLICE DEPARTMENT has automobile liability coverage under an automobile policy or other risk and indemnity agreement, such insurer or indemnitor is liable for the claims, rights and causes of action sued upon herein because Defendant BROWN's use of the vehicle lights to illuminate the Pontiac GS6 and the passengers in said vehicle assisted him in targeting said vehicle.

**Additional Relevant Facts Regarding Damages**

122.

Mr. Tillis sustained damages, both general and special, as a result of the gunshot wounds inflicted upon him by Defendant BROWN.

123.

Mr. Tillis is entitled to recover damages from Defendants for his serious and traumatic injuries he sustained to his face.  As a result of his gunshot wounds, Mr. Tillis was hospitalized and experienced both physical and mental pain and suffering, mental anguish and anxiety, emotional distress, scarring and disfigurement, and other general damages, as well as special damages such as medical expenses which exceed $10,000.00.  Mr. Tillis is entitled to recover these damages from Defendants.

124.

Mr. Tillis is entitled to compensatory damages under 42 U.S.C. § 1983 for all injuries suffered because of the violation of his constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution.  These compensatory damages include Mr.

Tillis' actual losses, physical pain and suffering, mental anguish, anxiety, and emotional distress, as well as all such other and special damages suffered because of the violations alleged in this Complaint.

125.

Mr. Tillis further shows that under 42 U.S.C. § 1983, he is entitled to recover punitive damages from Defendants sued in their individual capacities to include Defendant CHIEF RICKY BOREN and Defendant BROWN.  As more particularly alleged throughout this Complaint, Defendant BROWN acted with an evil motive or demonstrated reckless indifference to the constitutional rights of Mr. Tillis when he began shooting and injuring Mr. Tillis under circumstances that did not warrant or justify the use of deadly force, and when he failed to render or delayed the rendering of first aid and medical attention to Mr. Tillis.

126.

Defendant CHIEF RICKY BOREN is guilty of acting with an evil motive or demonstrated reckless indifference in his hiring and retention of Defendant BROWN who had a long history of the use of excessive force and violation of the pursuit policy which was known or should have been known to CHIEF RICKY BOREN, and in failing to adopt, promulgate and enforce an adequate use of deadly force policy, to adequately train Defendant BROWN on the use of deadly force and for such other acts and omissions described in this Complaint.

127.

The conduct of the Defendants in their individual capacities merit an award of punitive damages.

**DEFENDANTS ARE "PERSONS" FOR PURPOSES OF 42 U.S.C. § 1983**

128.

Plaintiff re-alleges and reaffirms the allegations of Paragraphs Nos. 1 through 127 and would further states as follows:

129.

Defendants BROWN and CHIEF RICKY BOREN are natural persons, and therefore, are persons for purposes of this action pursuant to 42 U.S.C. § 1983.

130.

Defendant the CITY is a local government unit.  The CITY is not an agency, department or arm of the State of Georgia.  Therefore, the CITY is a "person" for purposes of 42 U.S.C. § 1983.

131.

Defendant the COLUMBUS POLICE DEPARTMENT is a local government unit.  The COLUMBUS POLICE DEPARTMENT is not an agency, department or arm of the State of Georgia.  Therefore, the COLUMBUS POLICE DEPARTMENT is a "person" for purposes of 42 U.S.C. § 1983.

## PLAINTIFF'S CLAIMS, RIGHTS AND CAUSES OF ACTION

132.

PLAINTIFF hereby incorporates all of the foregoing paragraphs and factual allegations of this Complaint in each of the Counts, whether specifically stated or not.  It is PLAINTIFF's intent that all factual allegations contained in this Complaint, including the exhibits specifically incorporated in the Complaint by reference, are applicable to each of

PLAINTIFF's claims, rights and causes of action in order to provide contextual specificity.

133.

PLAINTIFF asserts claims, rights and causes of action arising from violations and deprivations of his rights under the United States Constitution, including the Fourth and Fourteenth Amendments, which are enforceable under 42 U.S.C. § 1983 and 1988.  PLAINTIFF seeks compensatory damages, punitive damages (against the Defendants sued in their individual capacities), attorney fees (under 42 U.S.C. § 1988) and all taxable costs.  PLAINTIFF also asserts claims, rights and causes of action under Georgia and Alabama state law for violation of the Georgia and Alabama Constitutions.

## COUNT 1

### 42 U.S.C. § 1983 – General Statement Regarding Claims Applicable to All Defendants

134.

PLAINITFF hereby incorporates all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts set forth in the remainder of the Complaint, as if fully set forth herein.

135.

PLAINTIFF brings this action under 42 U.S.C. § 1983.

136.

While 42 U.S.C. § 1983 is not itself a source of substantive rights, it does provide a method for vindicating federal rights elsewhere conferred.  *Graham v. Connor*, 490 U.S. 386 (1989).

137.

Here, PLAINTIFF seeks vindication of certain rights conferred upon him under the Fourth and Fourteenth Amendments to the United States Constitution including the rights to be free from

unreasonable seizure and excessive force that Defendants violated on November 6, 2016.

138.

PLAINTIFF brings these against Defendant BROWN in his individual and official capacities, and Defendant CHIEF RICKY BOREN in both his individual and official capacities. PLAINTIFF also brings these claims against the CITY and the COLUMBUS POLICE DEPARTMENT for municipal/county liability under *Monell v. Dept. of Soc. Services of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) for improper screening of Defendant BROWN's background and ongoing performance, for the appointment/hiring/retention of Defendant BROWN, for failing to properly train and supervise Defendant BROWN regarding the constitutional limitations of the use of deadly force, for the improper retention of Defendant BROWN, for the failure to promulgate and operationalize a constitutionally-compliant use of deadly force policy, among other claims described herein including the deliberate indifference to the protection of PLAINTIFF's constitutional rights. Mr. Tillis' injuries and damages were the result of official policy, custom, or practice of these Defendants, the act of an official policy maker attributable to these Defendants, and/or the direct result of deliberate indifference attributable to these Defendants.

## COUNT II

### 42 U.S.C. §§ 1988 – Claim for Attorney Fees – Applicable to All Defendants

139.

PLAINITFF hereby incorporates all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts set forth in the remainder of the Complaint, as if fully set forth herein.

140.

PLAINTIFF brings this action under 42 U.S.C. § 1988 which provides for an award of attorney's fees to prevailing plaintiffs in actions under 42 U.S.C. § 1983.  PLAINTIFF submits that an award of attorney fees would not be unjust and, therefore, PLAINTIFF seeks an award of attorney fees for which Defendants are liable.

141.

PLAINTIFF has had to retain counsel to prosecute his claims, rights and causes of action against these Defendants, and therefore, PLAINTIFF and his counsel are entitled to an award of attorney's fees.

**COUNT III**

**PLAINTIFF Seeks Damages for Violation of 42 U.S.C. § 1983- Applicable to All Defendants**

142.

PLAINITFF hereby incorporates all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts set forth in the remainder of the Complaint, as if fully set forth herein.

143.

PLAINTIFF suffered damages caused by Defendants' violations of 42 U.S.C. § 1983, and the deprivation of his constitutionally-protected rights.   The damages include compensatory damages, both general and special.

144.

PLAINTIFF's compensatory damages arising as a result of his own injuries include, but are not limited to his pain and suffering, mental anguish and emotional distress, and medical bills.

145.

PLAINTIFF is also entitled to recover attorney fees under 42 U.S.C. § 1988, as well as all

taxable costs.

146.

The Defendants sued in their individual capacity, including Defendant CHIEF RICKY

BOREN and Defendant BROWN, are liable for punitive damages.

## COUNT IV

### 42 U.S.C. § 1983 – PLAINTIFF's General Statement Regarding Claims for Deprivation of Rights Protected by the Fourth and Fourteenth Amendments to the United States Constitution – Applicable to All Defendants

147.

PLAINITFF hereby incorporates all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts set forth in the remainder of the Complaint, as if fully set forth herein.

148.

PLAINTIFF also brings this action under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution for deprivation of his constitutionally-protected rights. These rights include due process and equal protection under the Fourteenth Amendment, as well as rights guaranteed under the Fourth Amendment such as the right to be free from unreasonable seizure and excessive force.

149.

PLAINTIFF shows that Defendant BROWN and Defendant CHIEF RICKY BOREN, while acting in the course and scope of their employment with the CITY and the COLUMBUS

POLICE DEPARTMENT, committed acts under color of law, and deprived PLAINTIFF of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

150.

The Defendant BROWN, while acting in his capacity as a peace officer, deprived PLAINTIFF of liberty without due process of law, made an unreasonable seizure of his person, and thereby deprived PLAINTIFF of his rights, privileges, and immunities as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.  These rights include the right to be free from unreasonable seizure and the use of excessive force.

151.

By using the deadly and excessive force described in this Complaint when it was not objectively reasonable to do so, Defendant BROWN denied PLAINTIFF of his constitutionally protected right of liberty, all without due process of law.

152.

Defendants are liable to PLAINTIFF for all compensatory damages, attorney fees, punitive damages and costs to which he is entitled under the applicable law.

## COUNT V

### Excessive Force by Unlawful Use of Deadly Force – Deprivation of Rights Under the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983 – Liability of Defendant BROWN

153.

PLAINITFF hereby incorporates all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts set forth in the remainder of the Complaint, as if fully set forth herein.

154.

This action is brought against Defendant BROWN in his individual and official capacities, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. §§ 1983 and 1988.

155.

PLAINTIFF seeks all damages to which he is entitled under the law including compensatory damages (both general and special damages), punitive damages, attorney fees and costs.

156.

The conduct and actions of Defendant BROWN while in the course and scope of his employment as a police officer, in pursuing, shooting and wounding PLAINTIFF, was excessive and objectively unreasonable, was done intentionally, willfully, maliciously, and with deliberate indifference and reckless disregard for the natural and probable consequences of his acts, was done without justification, and was designed to and did cause serious physical and emotional pain and suffering in violation and deprivation of PLAINTIFF's constitutionally-protected rights under 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution including the right to be free from unreasonable seizure and the right to be from the use of excessive, unreasonable, and unjustified force and especially deadly force.

157.

At all times relevant hereto, Defendant BROWN was acting under color of state law as police officers, agents and employees of Defendants the CHIEF RICKY BOREN, CITY and the COLUMBUS POLICE DEPARTMENT, and were acting in the course and scope of such employment and/or agency when he shot and injured PLAINTIFF.

158.

At the time of the events that occurred on November 6, 2016, it was clearly established that law enforcement officers such as Defendant BROWN could not use deadly force against a person that did not pose an actual and imminent threat of death or great bodily harm.

159.

Any reasonable law enforcement officer knew or should have known of these constitutionally-protected rights at the time of the pursuit and at the time of the shooting of PLAINTIFF, as they were clearly established and were or should have been a part of each officers' training.

160.

In connection with his employment as a police officer for the CITY and the COLUMBUS POLICE DEPARTMENT, Defendant BROWN took an oath to support the Constitution and Laws of the United States and the Constitution of the Laws of the State of Georgia and any other state in which he is performing duties related to his employment, of which the rights and protections afforded by the Fourth and Fourteenth Amendments of the United States Constitution are included.

161.

On November 6, 2016, Defendant BROWN did intentionally use deadly and excessive force when he discharged his duty weapon and shot and injured the PLAINTIFF.

162.

At the time that Defendant BROWN discharged his duty weapon, he knew or should have known that bullets fired at PLAINTIFF were certain or reasonably likely to cause death or great bodily harm to those at whom he was shooting as well as those persons in the line of fire.

163.

Force is excessive, and therefore violates the Fourth Amendment of the United States Constitution, if it is not reasonable considering the circumstances facing the officer. See *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865 (U.S. 1989). The facts and circumstances of this case show that Defendant BROWN's act of shooting PLAINTIFF was clearly and objectively unreasonable in light of the circumstances facing the officer.

164.

At the time of the shooting, passengers in the Pontiac GS6 were clearly visible to Defendant BROWN. Further, because of his positioning away from the Pontiac GS6 at the scene, Defendant BROWN was not in imminent danger or risk of death or great bodily harm by the actual or potential movement of the vehicle.

165.

In fact, when Defendant BROWN fired his duty weapon at the Pontiac GS6, the vehicle was moving away from him, and thus did not pose an imminent danger or threat of death or great bodily harm to him or anyone else at the scene.

166.

Under the circumstances, Defendant BROWN's act of shooting his duty weapon at PLAINTIFF was excessive and violated his Fourth and Fourteenth Amendment rights because the amount of force used was not and could not be considered reasonable by any objectively reasonable police officer in the same or similar circumstances.

167.

At the time of the shooting, other officers at the scene near the Pontiac GS6 did not fire their duty weapons because they did not fear for their lives.

168.

At the time Defendant BROWN used deadly force against PLAINTIFF, he had been unreasonably seized by BROWN.   There was no warrant for PLAINTIFF's arrest, and Defendant BROWN had no evidence indicating that PLAINTIFF had knowingly committed a crime, was committing a crime or was about to commit a crime.   The seizure was unreasonable and a deprivation of PLAINTIFF's constitutional rights.

169.

During the seizure, Defendant BROWN fired his service weapon at PLAINTIFF and, in doing so, wounded him.   As set forth in other parts of this Complaint, the circumstances with which Defendant BROWN was presented in the moments leading up to the shooting and at the time he fired his duty weapon was such that it was objectively unreasonable for him to have use deadly force against the PLAINTIFF.

170.

Defendant BROWN is liable for all damages PLAINTIFF suffered because of his unreasonable seizure of the PLAINTIFF, and he is also liable for all damages caused by his objectively unreasonable use of deadly force against the PLAINTIFF.

**COUNT VI**

**Unreasonable Seizures – Deprivation of Rights Under the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983 – Liability of Defendant BROWN**

171.

PLAINITFF hereby incorporates all of the foregoing paragraphs and factual

41

allegations of this Complaint, as well as all facts set forth in the remainder of the Complaint, as if fully set forth herein.

### 172.

Defendant BROWN, while acting in the course and scope of his employment as a police officer for the CITY and the COLUMBUS POLICE DEPARTMENT used his department-issued police vehicle to pursue the Pontiac GS6 and then used deadly force in the form of gunfire, and the threat of further gunfire, to prevent PLAINTIFF from moving or traveling, without lawful reason or justification.   Defendant BROWN's actions constituted an unreasonable seizure of the PLAINTIFF.

### 173.

Defendant BROWN's actions in effecting a seizure of the PLAINTIFF was objectively unreasonable.

### 174.

Defendant BROWN's unlawful and unreasonable seizure of the PLAINTIFF was a direct and proximate cause of the shooting and PLAINTIFF's injuries.   Thus, Defendant BROWN is liable for the natural and probable consequences of having unreasonably seized the PLAINTIFF, including the damages PLAINTIFF has suffered as a result of same.

### 175.

Because Defendant BROWN's actions resulted in and were a direct cause of the PLAINTIFF's injuries, he is liable to PLAINTIFF for all damages he has suffered.

## COUNT VII

## 42 U.S.C. § 1983 – Supervisory Liability of CHIEF RICKY BOREN – Individual Capacity

### 176.

PLAINITFF hereby incorporates all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts set forth in the remainder of the Complaint, as if fully set forth herein.

177.

PLAINTIFF shows that Defendant CHIEF RICKY BOREN, in his individual capacity, is liable to PLAINITFF for violation of his constitutional rights for (1) his own culpable action or inaction in failing to properly screen the background of Defendant BROWN, (2) his own culpable action or inaction in retaining Defendant BROWN given his record of inappropriate performance and non-compliance, (3) his own culpable action or inaction in failing to adopt, implement and enforce an adequate hiring and retention policy, (4) his own culpable conduct in failing to promulgate and enforce a constitutionally-compliant use of deadly force policy, (5) his own culpable conduct in failing to adequately train Defendant BROWN on the constitutional limitations of the use of deadly force, and (6) for conduct that shows a deliberate indifference to the constitutionally-protected rights of those with whom Defendant BROWN comes into contact while in the course and scope of his employment.

178.

PLAINTIFF's Complaint shows that Defendant BROWN had a history of using excessive force when making arrests, assisting other officers in making arrests, and otherwise in preserving the peace and also that he had a history of non-compliance with pursuit policies/procedures.

179.

Adequate scrutiny of the background and performance history of Defendant BROWN would lead any reasonable policymaker to conclude that the plainly obvious consequences of the decision to (1) forego establishing adequate hiring guidelines that ensure that only candidates

possessing the proper skills and policing demeanor are hired/retained; (2) to hire candidates that have a history or background of the use of excessive force when making arrests or assisting other officers in making arrests and otherwise in keeping the peace, and (3) ignore pursuit policy and excessive use of force policies, procedures and customs, would be the deprivation of a third party's federally protected rights, and therefore, CHIEF RICKY BOREN's failure to conduct such adequate scrutiny of the background of Defendant BROWN, and thus, the hiring and retention of Defendant BROWN amounts to deliberate indifference to the constitutionally-protected rights of persons coming into contact with such officers, including Defendant BROWN.

180.

Here, Defendant CHIEF RICKY BOREN's (1) failure to supervise and/or train Defendant BROWN on the constitutional limitations of use of deadly force, (2) failure to properly train and supervise Defendant BROWN, and (3) retention of Defendant BROWN, caused Defendant BROWN to use and was a moving force behind his use of deadly force when it was not objectively reasonable to do so which resulted in PLAINTIFF being shot and tragically injured in violation of his constitutionally-protected rights.

181.

Here, because Defendant CHIEF RICKY BOREN failed to adopt, promulgate, enforce and train his subordinates on a constitutionally-compliant use of deadly force policy, especially when the background and performance history of his subordinates reveals a propensity to use or history of using excessive force (such as the case of Defendant BROWN), his failure to train or supervise, and his retention of Defendant BROWN amounts to deliberate indifference to the constitutional rights of the PLAINTIFF and others who come into contact with these armed police officers.

## COUNT VIII

### 42 U.S.C. § 1983 – Violation of Fourth and Fourteenth Amendments - Supervisory Liability of CHIEF RICKY BOREN in his Official Capacity, and Liability of the CITY and the COLUMBUS POLICE DEPARTMENT

182.

PLAINTIFF shows that the CITY and the COLUMBUS POLICE DEPARTMENT are liable under 42 U.S.C. § 1983 because deprivation of PLAINTIFF's constitutionally-protected rights, arising under the Fourth and Fourteenth Amendments, occurred as a result of one or more customs, policies, or practices of the CITY and the COLUMBUS POLICE DEPARTMENT and that of officials such as CHIEF RICKY BOREN, both policy makers and decision makers, whose acts may fairly be said to be those of the CITY and the COLUMBUS POLICE DEPARTMENT.

183.

PLAINITFF hereby incorporates all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts set forth in the remainder of the Complaint, as if fully set forth herein.

184.

The CITY is the governing authority for Columbus, Muscogee County.

185.

Acting pursuant to its governing authority, the CITY enacted legislation creating the COLUMBUS POLICE DEPARTMENT.

186.

The CITY delegated final policy making authority to the Chief of Police over implementation of law enforcement training, policies, procedures, internal investigations and disciplinary action within the COLUMBUS POLICE DEPARMENT.   Further, by statute,

Defendant CHIEF RICKY BOREN, as Chief of Police, is the executive officer of the COLUMBUS POLICE DEPARTMENT, and therefore, he is a policymaker and decision maker for the CITY and the COLUMBUS POLICE DEPARTMENT.

187.

The CITY has manifested its delegation of final policy making authority to the Chief of Police, CHIEF RICKY BOREN, in the following ways:  (a) by giving CHIEF RICKY BOREN authority to develop and implement policies and procedures related to the use of force, vehicle pursuits and internal investigations; (b) by giving CHIEF RICKY BOREN authority to implement training within the COLUMBUS POLICE DEPARTMENT related to use of force, vehicle pursuits, and internal investigations; and (c) by giving CHIEF RICKY BOREN authority to implement policies and procedures for recruiting, hiring, promoting and disciplining employees of the COLUMBUS POLICE DEPARTMENT.

188.

As to each of the areas identified in Paragraph 187, Defendant CHIEF RICKY BOREN's decisions are not subject to meaningful review or oversight by the CITY.

189.

As Chief of Police for the COLUMBUS POLICE DEPARTMENT, CHIEF RICKY BOREN exercised final policy making authority for the CITY over those matters set forth in Paragraph 187.

190.

At all times relevant hereto, Defendant BROWN and all other officers involved in the pursuit and the relay of information during the pursuit, acted pursuant to customs, policies and practices of CHIEF RICKY BOREN, the CITY, and the COLUMBUS POLICE DEPARTMENT

accordingly, CHIEF RICKY BOREN, the CITY, and the COLUMBUS POLICE DEPARTMENT are liable for any and all constitutional violations committed against the PLAINTIFF.

191.

Said customs, policies and practices of CHIEF RICKY BOREN, the CITY, and the COLUMBUS POLICE DEPARTMENT, which include systemic deficiencies in its police department arising from the deliberate indifference of CHIEF RICKY BOREN, the CITY, and the COLUMBUS POLICE DEPARTMENT and its policymakers in failing to develop and implement appropriate customs, policies and practices, were the moving force behind the constitutional violations complained of by PLAINTIFF.

192.

Said customs, policies, and systemic deficiencies include but are not limited to the following:

(a)  Maintaining a vague and ambiguous use of force policy which fails to provide clear guidance as to the definition of deadly force; and

(b)  By engaging in a custom or practice of failing to conduct thorough, objective, and uniform investigations and evaluations of officer misconduct and incidents involving the use of deadly force, police pursuits, purported offender identification, with the result being that officers were led to believe that they could violate the Fourth Amendment to the United States Constitution with impunity; and

(c)  Failing to adopt, promulgate or enforce a written policy pertaining to (1) the hiring, training, supervision, retention and discipline of law enforcement officers employed by the CITY and the COLUMBUS POLICE DEPARTMENT; (2) the firing or termination

of police officers; and (3) disciplining police officers.

193.

At all times relevant hereto, the CITY, through the COLUMBUS POLICE DEPARTMENT and CHIEF RICKY BOREN had a policy, practice, or custom of ratifying police misconduct and/or exercising deliberate blindness to allegations of police misconduct. This policy, practice, or custom has created an environment that fosters police misconduct because officers believe that they will not be disciplined for such conduct.

194.

The policies, practices, or customs of the CITY, through the COLUMBUS POLICE DEPARTMENT and CHIEF RICKY BOREN, were the moving force behind the constitutional deprivations suffered by the PLAINTIFF.

195.

The CITY, the COLUMBUS POLICE DEPARTMENT and CHIEF RICKY BOREN have a policy, practice, or custom of ratifying police misconduct and/or of exercising deliberate blindness to allegations of police misconduct. The policy, practice, or custom has created an environment which fosters police misconduct that deprives civilians of their constitutional rights because officers believe that they will not be disciplined for such conduct.

196.

Manifestations of the above policies, practices, or customs, include but are not limited to:

(a)     Even though he was not in imminent danger, Defendant BROWN fired 21 shots at

a vehicle which he knew was occupied by passengers;

(b)     None of the other COLUMBUS POLICE DEPARMENT officers involved in the pursuit or present at the scene took any action to prevent or contest the use of force by Defendant BROWN;

(c)     The COLUMBUS POLICE DEPARTMENT did not take any disciplinary action against Defendant BROWN in connection with this event;

(d)     In covering up and justifying the constitutional violators, the COLUMBUS POLICE DEPARMENT employed a practice of centralizing the authorship of the investigation reports; and

(e)     In conducting a character assassination of the PLAINTIFF during the investigation which had nothing to do with the appropriateness of the use of force.

197.

At all times relevant hereto, Defendant BROWN acted pursuant to the policies, practices and customs of the CITY and the COLUMBUS POLICE DEPARTMENT and accordingly the CITY and the COLUMBUS POLICE DEPARTMENT are liable for any and all constitutional violations committed against the PLAINTIFF.

198.

At all times relevant hereto, the CITY, through the COLUMBUS POLICE DEPARTMENT and CHIEF RICKY BOREN, failed to train and/or instruct its police officers properly regarding the use of force against suspects and preventing excessive force from being used against suspects.

199.

This constitutionally inadequate training and/or instruction amounts to deliberate

indifference on the party of CHIEF RICKY BOREN, the CITY and the COLUMBUS POLICE DEPARTMENT to the constitutional rights of persons with whom Columbus Police Department officers come into contact.

200.

As a direct result of the inadequate training and/or instruction, amounted to a policy, practice and custom of inaction and resulted in and was a direct cause of another officer's initialing and Defendant BROWN's joining in a vehicular pursuit that violated PLAINTIFF's constitutional rights as it was not supported by a warrant, probable cause for a pursuit or even reasonable cause. Properly vetted and trained officers would never have initiated and/or participated in such a pursuit, including across state lines, because it was not objectively reasonable to do so.

201.

The allegations set forth in the preceding Count, against CHIEF RICKY BOREN in his individual capacity, are specifically adopted by reference for purposes of this Count.  PLAINTIFF contends that these allegations establish the requisite elements of proof necessary to hold CHIEF RICKY BOREN, in his official capacity, the CITY and the COLUMBUS POLICE DEPARTMENT, liable to PLAINTIFF for the deprivations of his constitutionally-protected rights.

202.

By statute, custom, policy or procedure, Defendant CHIEF RICKY BOREN, in his official capacity as Chief of Police, the CITY and COLUMBUS POLICE DEPARTMENT, are liable to PLAINTIFF for depriving him of constitutionally-protected rights.

203.

PLAINTIFF shows that Defendant CHIEF RICKY BOREN's subordinate, Defendant BROWN, violated PLAINTIFF's rights under the United States Constitution by using deadly force against him when it was objectively unreasonable to do so, and that CHIEF RICKY BOREN, in his official capacity as Chief of Police, and as a policymaker and decision maker for the CITY and the COLUMBUS POLICE DEPARTMENT, should be liable for the conduct of Defendant BROWN because his deliberate indifference to the constitutional rights of persons with whom his subordinates would come into contact while acting in the course and scope of their employment, including PLAINTIFF, was the moving force behind the deprivation of PLAINTIFF's constitutionally-protected rights.

204.

Defendant CHIEF RICKY BOREN, acted with deliberate indifference to the consequences, and established and maintained a policy, practice or custom of inaction which directly caused or was the moving force behind the violations of PLAINTIFF's constitutionally-protected rights by his subordinate, Defendant BROWN.

205.

Here, Defendant CHIEF RICKY BOREN failed to adequately supervise and train Defendant BROWN; and there is a causal link between his failures and the violation of PLAINTIFF's rights, and the failure to train or supervise amounts to deliberate indifference.

206.

The lack of such training and/or instruction amounted to a policy of inaction and resulted in

and was a direct cause of another officer's initialing and Defendant BROWN's joining in a vehicular pursuit that violated PLAINTIFF's constitutional rights as it was not supported by a warrant, probable cause for a pursuit or even reasonable cause.  Properly vetted and trained officers would never have initiated and/or participated in such a pursuit, including across state lines, because it was not objectively reasonable to do so.

207.

The lack of such training and/or instruction amounted to a policy of inaction and resulted in and was a direct cause of Defendant BROWN using deadly force by firing his duty weapon at the PLAINTIFF when it was not objectively reasonable to do so.  The facts show that the Pontiac GS6 was moving away from Defendant BROWN when he fired at the PLAINTIFF such that any movement of the Pontiac GS6 did not present an imminent risk of death or great bodily harm.  Any objectively reasonable officer perceiving these circumstances would conclude that none of the officers in the area were at imminent risk of death or great bodily harm.

208.

Defendant BROWN was armed with a lethal weapon and authorized by Defendant CHIEF RICKY BOREN to carry that weapon and use it to carry out the functions of a police officer. Thus, it was a moral certainty that Defendant BROWN would utilize his duty weapon in making arrests and preserving the peace.

209.

Given the moral certainty that police officers, who are charged with making arrests and preserving the peace, will be called upon to use deadly force in the form of their duty weapons when apprehending suspects, making arrests and preserving the peace, the need for proper vetting of such officers to prevent the hiring and arming of officers that have a history or propensity to use

excessive force, and violate pursuit policies/procedures, and the need to properly train and supervise such officers in the constitutional limitations on the use of deadly force is so obvious, that the failure to do so and the failure to adopt, implement and enforce appropriate and adequate policies to ensure these objectives and to protect the constitutional rights of persons with whom the police officers come into contact is properly characterized as deliberate indifference to constitutional rights.

210.

Defendant CHIEF RICKY BOREN's deliberate indifference to the constitutional rights of person with whom the police officers, that he hired/retained and for whom he is statutorily responsible, including the PLAINTIFF, resulted in and caused Defendant BROWN to use deadly force when it was not objectively reasonable to do so.

211.

Defendant CHIEF RICKY BOREN, the CITY and the COLUMBUS POLICE DEPARTMENT continued Defendant BROWN's employment when they either knew, or in the exercise of reasonable care, should have known, of his inability or unwillingness to follow department rules and procedures.

212.

Defendant CHIEF RICKY BOREN's hiring/retention of Defendant BROWN, when he knew or should have known of his long history and propensity to use excessive force and history of violating pursuit policies/procedures when making arrests or preserving the peace in the course and scope of his employment as a police officer constitutes ratification or acceptance of BROWN' use

of excessive force and violation of pursuit policies/practices, and establishes such use of excessive force as the official custom, policy or practice of the CITY and the COLUMBUS POLICE DEPARTMENT.

213.

Acting under color of law and pursuant to official custom, policy or practice, Defendants CHIEF RICKY BOREN, the CITY and the COLUMBUS POLICE DEPARTMENT, recklessly, or with deliberate indifference and callous disregard of PLAINTIFF's constitutionally-protected rights, failed to instruct, supervise, control and discipline on a continuing basis Defendant BROWN in his duties to refrain from: (1) initiating, participating in, leading and/or perpetuating an unlawful vehicular pursuit; (2) using deadly force when it was not objectively reasonable to do so; and (3) otherwise depriving PLAINTIFF of his constitutional rights, privileges and immunities.

214.

Defendants CHIEF RICKY BOREN, the CITY and the COLUMBUS POLICE DEPARTMENT had actual and/or constructive knowledge that (a) hiring police officers with a history of using excessive force; (b) arming them and bestowing upon them authority of make arrests and preserve the peace; (c) while not providing adequate training on the constitutional limitations on the use of deadly force, and (d) not promulgating and operationalizing a written use of deadly force policy, made it virtually certain that Defendant BROWN's firing of his service weapon where it was objectively unreasonable to do so and these Defendants' failure to prevent such a misuse of the deadly force through proper instruction, supervision, control, disciple and training on a continuing and ongoing basis, and the promulgation and enforcement of an

appropriate use of deadly force policy constitutes deliberate indifference to PLAINTIFF's constitutional rights.

215.

As a direct cause of the acts of Defendant CHIEF RICKY BOREN, the CITY and the COLUMBUS POLICE DEPARTMENT, and their policies of inaction and lack of proper vetting, training, supervision, and discipline, PLAINTIFF was shot and sustained tragic injury.  As a result of PLAINTIFF's injuries, he suffered damages, both general and special which are described more fully in other areas of this Complaint (which are incorporated by reference), all of which flow from the deprivation of PLAINTIFF's constitutional rights guaranteed by the United States Constitution, Fourth and Fourteenth Amendments, and protected by 42 U.S.C. § 1983.

**COUNT IX**

**42 U.S.C. § 1983 – Violation of Fourth and Fourteenth Amendments - Indifference to the Serious Medical Needs of the PLAINTIFF - Liability Defendant BROWN**

216.

PLAINITFF hereby incorporates all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts set forth in the remainder of the Complaint, as if fully set forth herein.

217.

As a result of the shooting, PLAINITFF sustained multiple gunshot wounds to the face that

caused him to bleed and suffer audible injuries.  His gunshot wounds were so obvious that a lay person would easily recognize the necessity for medical attention.  PLAINTIFF's gunshot wounds constituted a serious medical need.

218.

Following the shooting, PLAINTIFF, despite his obvious injuries, was ordered to lay on the ground by Defendant BROWN.

219.

Defendant BROWN exhibited deliberate indifference to PLAINTIFF's serious medical needs in that he failed to provide comfort measures, failed to provide first aid, and otherwise denied or delayed medical treatment.  This deliberate indifference to PLAINTIFF's serious medical needs caused him undue pain and suffering and constitutes a violation of his rights under the Eighth and Fourteenth Amendments of the United Stated Constitution.

220.

Defendant BROWN knew of the risk of serious harm to PLAINTIFF, disregarded that risk, and demonstrated a level of conduct far beyond and more egregious than mere negligence or gross negligence but rather a callous and deliberate indifference to PLAINTIFF' serious medical needs.

221.

As a direct result of the acts, omissions and deliberate indifference to PLAINTIFF' serious medical needs, Defendant BROWN deprived PLAINTIFF of the right to life, the right to be free of suffering, equal protection, due process of law, and the right to receive medical care for a serious medical need guaranteed him by the United States Constitution including the Fourth and

Fourteenth Amendments.

## COUNT X

### 42 U.S.C. § 1983 – Violation of Fourth and Fourteenth Amendments - for Custom, Policy or Practice of Use of Excessive Force - Liability of CHIEF RICKY BOREN, the CITY and the COLUMBUS POLICE DEPARTMENT

222.

PLAINITFF hereby incorporates all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts set forth in the remainder of the Complaint, as if fully set forth herein.

223.

Prior to November 6, 2016, Defendants CHIEF RICKY BOREN, the CITY and the COLUMBUS POLICE DEPARTMENT developed, maintained, utilized and/or adhered to one or more policies, customs, patterns or practices (collectively "policy" or "policies") exhibiting deliberate indifference to the constitutional rights of persons in the community and those persons coming into contact with armed police officers, that caused or was the moving force behind the violation of PLAINTIFF's constitutional rights including those protected by 42 U.S. C. § 1983 and the United States Constitution, including Amendments thereto.

224.

These policies exhibited deliberate indifference to the constitutional rights of persons in the CITY, including but not limited to, those persons subject to the jurisdiction and peacekeeping authority of the COLUMBUS POLICE DEPARTMENT, as well as those persons coming into contact with the police officers for the CITY and the COLUMBUS POLICE DEPARTMENT.

225.

Defendants CHIEF RICKY BOREN, the CITY and the COLUMBUS POLICE DEPARTMENT maintained a policy, custom or practice of inadequately and improperly investigating citizen complaints of police misconduct and police officers' excessive use of force and/or allowing the use of excessive force, failing to properly discipline officers accused of using excessive force, and failing to provide proper training to guard against the use of excessive force.

226.

Prior to Defendant CHIEF RICKY BOREN hiring/retaining Defendant BROWN, Defendants CHIEF RICKY BOREN, the CITY and the COLUMBUS POLICE DEPARTMENT had knowledge, actual and/or constructive, of the propensity of Defendant BROWN to use excessive force when making arrests or assisting officers.

227.

These Defendants also had knowledge, actual and/or constructive, of complaints alleging excessive use of force by Defendant BROWN and other officers employed by the CITY and the COLUMBUS POLICE DEPARTMENT.

228.

Despite this knowledge, these Defendants failed to properly investigate the complaints and incidents, failed to properly discipline the involved officers, failed to properly scrutinize the background of new hires, failed to re-assess the history and habits of existing police officers, and failed to properly train police officers regarding the

constitutional limitations on the use of force such that these Defendants ratified the use of excessive use of force (including the use of excessive force).

229.

The ratification of excessive use of force (including the use of excessive force) by police officers serving in the territorial limits of the CITY and the COLUMBUS POLICE DEPARTMENT became wand was the custom, policy and practice of these Defendants and was the cause and moving force of the deprivation of PLAINTIFF's constitutional rights and the shooting of the PLAINTIFF.

230.

Because the incidents generally described herein are and were so numerous, it was obvious to any reasonable policy maker or decision maker that it would continue if appropriate policies were not promulgated, implemented, and enforced through training and discipline.  The Defendants' conduct, acts and/or omissions described herein amount to deliberate indifference to the constitutional rights PLAINTIFF and others coming into contact with police officers serving the CITY and the COLUMBUS POLICE DEPARTMENT.

231.

These Defendants are liable for PLAINTIFF's damages caused by their deliberate indifference.

## **COUNT XI**

### **Punitive Damages – Applicable to All Defendants Sued in Their Individual Capacity**

232.

PLAINITFF hereby incorporates all of the foregoing paragraphs and factual

allegations of this Complaint, as well as all facts set forth in the remainder of the Complaint, as if fully set forth herein.

233.

PLAINTIFFS show that under 42 U.S.C. § 1983, punitive damages may be awarded if the official conduct of the Defendant is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights.

234.

Here, Defendants BROWN and CHIEF RICKY BOREN's conduct demonstrated not only evil intent but reckless or callous indifference to the constitutional rights of the PLAINITFF.

235.

Defendant BROWN discharged his duty weapon under circumstances that did not present an imminent threat of death or great bodily harm.  His Dashcam video footage shows that when he unleashed his hail of gunfire, the Pontiac GS6 was moving away from his direction, signaling an effort to retreat.  Thus, when he unleashed his hail of gunfire, he was not in a position of danger, and therefore, he was not presented with an imminent threat of death or great bodily harm.

236.

Any objectively reasonable officer presented with these circumstances, would not

have used deadly force.

237.

Defendant BROWN's conduct demonstrated deliberate indifference and/or reckless and/or callous disregard for PLAINTIFF's constitutional rights such that PLAINTIFF is entitled to and Defendant is liable for punitive damages.

238.

Defendant CHIEF RICKY BOREN is liable, in his individual capacity, for punitive damages.

239.

Defendant CHIEF RICKY BOREN is and has been the duly selected Chief of Police for the CITY and the COLUMBUS POLICE DEPARTMENT.  He is charged with the duty of making arrests and preserving the peace.  He is a policymaker and decision maker for the CITY and the COLUMBUS POLICE DEPARTMENT.

240.

Defendant CHIEF RICKY BOREN is responsible for the actions of Defendant BROWN, including the consequences of his actions.

241.

Defendant CHIEF RICKY BOREN allowed Defendant BROWN to be hired and retained as a police officer, and allowed him to be equipped with a duty weapon that had the capacity to employ deadly force against subjects such as the PLAINTIFF despite having knowledge of a long history of using excessive force and a history of violating pursuit policies/procedures, which history is documented in his personnel files, official

records of CHIEF RICKY BOREN, the CITY and the COLUMBUS POLICE
DEPARTMENT, and the public records.

242.

Defendants CHIEF RICKY BOREN, the CITY, and the COLUMBUS POLICE
DEPARTMENT are liable for punitive damages.

**COUNT XII**

**STATE LAW CLAIMS – Applicable to All Defendants**

243.

PLAINITFF hereby incorporates all of the foregoing paragraphs and factual
allegations of this Complaint, as well as all facts set forth in the remainder of the
Complaint, as if fully set forth herein.

244.

In addition to the Constitutional and Federal claims set forth above, and restated
herein verbatim, PLAINITFF asserts claims arising out of violation of Georgia and
Alabama law (if applicable).

245.

Defendant BROWN engaged in an improper pursuit and unlawfully and
intentionally used unjustifiable excessive deadly force against the PLAINITFF, when he
launched a hail of gunfire shooting him in the face, causing serious and permanent personal
injuries, disfigurement and immense pain and suffering, along with medical expenses

exceeding $10,000.00.

246.

Defendant BROWN's improper pursuit, unreasonable and unjustifiable use of deadly force by shooting the PLAINITFF was a direct and proximate cause of the injuries and damages (general and special damages) suffered by the PLAINTIFF.

247.

Defendant BROWN's unlawful actions include, but are not limited to:

(a)     Excessive use of force;

(b)     Use of excessive force;

(c)     Assault and battery;

(d)     Failure to adhere to use of force policies;

(e)     Failure to adhere to policies and/or procedures regarding the use of deadly force;

(f)     Failure to adhere to policies and/or procedures regarding the use of deadly force for potential misdemeanor offenses;

(g)     Unlawful use of force;

(h)     Unlawful discharge of firearm;

(i)     Unlawful seizure; and

(j)     Violation of O.C.G.A. § 17-4-20 (b).

248.

Defendants CHIEF RICKY BOREN, the CITY, and the COLUMBUS POLICE DEPARTMENT improperly hired and trained Defendant BROWN, negligently retained him, which resulted in the improper pursuit, and the illegal and unnecessary use of deadly

force against the PLAINITFF, which caused his serious personal injuries and damages (both general and special damages).

249.

Defendants CHIEF RICKY BOREN, the CITY, and the COLUMBUS POLICE DEPARTMENT failed to implement and/or adhere to policies and procedures, including but not limited to the following:

(a)     The use of deadly force;

(b)     The use of deadly force against potential misdemeanor suspects;

(c)     Unlawful seizure;

(d)     Improper pursuit; and

(e)     Other customs, policies and procedures that will be discovered during the course of this case.

## COUNT XIII

### STATE LAW CLAIMS – Intentional Infliction of Emotional Distress

250.

PLAINITFF hereby incorporates all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts set forth in the remainder of the Complaint, as if fully set forth herein.

251.

Maliciously pursuing, shooting, seizing and arresting a citizen is behavior outside that tolerated by the norms of a civilized society, and the malicious conduct in this case

directly caused extreme emotional distress to PLAINITFF.

252.

Subjecting an individual to a violent pursuit, shooting, and seizure is behavior outside that tolerated by the norms of a civilized society, and the violent seizure of PLAINTIFF in this case directly caused him extreme emotional distress.

253.

Seizing and detaining an individual that has been violently shot and who has obvious gunshot wounds without providing any comfort measures or first aid, one of the most basic humane accommodations, is behavior outside that tolerated by the norms of a civilized society, and the unlawful pursuit, shooting, seizure and detention in this case was a direct cause of extreme emotional distress inflicted upon the PLAINTIFF.

254.

As a result, Defendants' extreme and outrageous behavior, PLAINTIFF has suffered mental anguish, distress, embarrassment, and anxiety.

## COUNT XIV

## STATE LAW CLAIMS – DAMAGES

255.

PLAINITFF hereby incorporates all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts set forth in the remainder of the Complaint, as if fully set forth herein.

256.

As a result of Defendants' wrongful conduct under the United States Constitution, Federal and State Law claims as set forth above, PLAINTIFF suffered serious permanent

personal injuries, permanent disfigurement, endured immense pain and suffering and incurred damages and medical expenses in excess of $10,000.00.

## COUNT XV

## STATE LAW CLAIMS – PUNITIVE DAMAGES

257.

PLAINITFF hereby incorporates all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts set forth in the remainder of the Complaint, as if fully set forth herein.

258.

Defendant BROWN's actions, including but not limited to the improper pursuit by Defendant BROWN and his use of unnecessary and unjustifiable deadly force by shooting PLAINTIFF in the face, demonstrates willful misconduct, malice, wantonness, oppression, and conscious and deliberate indifference to the consequences of his actions.

259.

Defendants CHIEF RICKY BOREN's failure to implement and/or adhere to policies and procedures as described above, despite having knowledge of Defendant BROWN's history of and propensity to use excessive force and his prior violation of pursuit policies/procedures, demonstrates willful misconduct, malice, wantonness, oppression, and conscious and deliberate indifference to the consequences of his actions.

260.

PLAINTIFF is entitled to recover punitive damages from Defendants BROWN and CHIEF RICKY BOREN in their individual capacity, an amount to be determined by the enlightened conscience of the jury.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF respectfully prays:

(a)     That process issue in this action;

(b)     That PLAINTIFF be granted a trial by jury on issues so triable;

(c)     That judgment be entered in favor of PLAINTIFF and against Defendants in an amount to be determined by the enlightened conscience of a fair and impartial jury as will fully and adequately compensate PLAINTIFF for the violation of his constitutional rights, personal injuries and pain and suffering;

(d)     That judgment be entered in favor of PLAINTIFF and against the Defendants for the medical expenses incurred to date as well as for medical expenses which will be incurred in the future;

(e)      That PLAINTIFF has and recovers a verdict and judgment against Defendants in their official and individual capacities for all compensatory and general damages, and for reasonable attorney fees pursuant to 42 U.S.C. § 1988, and for all such amounts as may be proven before the trier of fact;

(f)     That punitive damages be awarded against the individual Defendants only, in an amount to be determined by the enlightened conscious of the jury to deter them and others from similar misconduct in the future;

(g)     That all costs be taxed against Defendants; and

(h)     That the Court award such other and further relief as the Court

deems just and proper.

This 1st day of November, 2018.

Respectfully submitted,
**FORREST B. JOHNSON & ASSOCIATES**

/s/Renee Y. Tucker

Forrest B. Johnson
Georgia State Bar No.:  393480
Renee Y. Tucker
Georgia State Bar No.:  454262
Hannah R. Moore
Georgia State Bar No.:   581504

1745 Martin Luther King, Jr. Drive, N.W.
Atlanta, GA  30314
Telephone: (404) 758-9111
Facsimile:  (888) 298-0458
*Attorneys for Plaintiff*